RulOp
FILED
2007 MAY -3 A 8:38
U.S. ... RT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CONNECTICUT COMMUNITY BANK,
NATIONAL ASSOCIATION,
    Plaintiff,

v.

THE BANK OF GREENWICH,
    Defendant.

Case No. 06cv1293 (JBA)

## RULING ON DEFENDANT'S MOTION TO DISMISS [DOC. # 18]

Defendant The Bank of Greenwich ("BOG") moves to dismiss the Complaint [Doc. # 1] filed by plaintiff Connecticut Community Bank, National Association ("CCB") which claims violations of the Trademark Counterfeiting Act of 1984 ("Lanham Act"), 15 U.S.C. §§ 1114 and 1125(a), and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110(b). According to defendant, CCB's claim that the BOG has infringed the trademark of plaintiff's subsidiary The Greenwich Bank & Trust Company must be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the reasons that follow, defendant's Motion is denied.

### I. Factual Background

Assuming the truth of the allegations in the Complaint in considering defendant's Motion, plaintiff owns The Greenwich Bank & Trust Company ("GBTC"), which opened in February 1998 and has its principal place of business at 115 East Putnam Avenue in Greenwich, Connecticut, as well as two other locations in the

1

city. (Compl. ¶¶ 10, 11.) The names "Greenwich Bank & Trust Company" and "Greenwich Bank & Trust" are registered under Trademark No. 2,235,503 for banking services on the Supplemental Register of the United States Patent and Trademark Office ("USPTO") (id. ¶ 19) and identified as "Greenwich Bank" by the Federal Reserve Bank of New York (id. ¶ 13).

In March 2006 plaintiff learned that defendant had filed an application with the Connecticut Department of Banking to form "The Bank of Greenwich," and wrote to defendant to warn of potential infringement of the GBTC trademark. (Id. ¶ 21.) Although the parties subsequently corresponded about this potential clash, defendant nonetheless proceeded with its choice of the BOG name, advertising and promoting itself as such and establishing the website: www.thebankofgreenwich.com. (Id. ¶¶ 22, 23.) It will eventually open at 165 Mason Street in Greenwich, less than a mile from plaintiff's main branch. (Id. ¶ 24.)

## II. Standard

When deciding a motion to dismiss, "we must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor," UCAR Int'l Inc. v. Union Carbide Corp., 119 Fed. Appx. 300, 301 (2d Cir. 2004). "A complaint should not be dismissed on the pleadings unless it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief." Thomas v. Ashcroft, 470 F.3d 491, 495 (2d Cir. 2006) (internal quotation omitted). A complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief," which "simply 'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (U.S. 2002). "Thus, the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Desiano v. Warner-Lambert Co., 326 F.3d 339, 347 (2d Cir. 2003) (internal quotation marks omitted).

### III. Discussion

#### A. Scope of materials considered

Motions to dismiss for failure to state a claim are considered on the basis of the facts alleged in the complaint, as well as documents attached to, referenced in, or integral to the complaint. See Field Day, LLC v. Cty. of Suffolk, 463 F.3d 167, 192 (2d Cir. 2006); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991); Chambers v. Time Warner, Inc., 282

F.3d 147, 153 (2d Cir. 2002).[1]

In this case, the materials available for consideration in addition to the Complaint are: plaintiff's trademark registration certificate (Compl. Ex. A) and the excerpt of the Trademark

---

[1] Defendant's reading of <u>Cortec Indus., Inc.</u>, 949 F.2d at 48, as also permitting consideration of "documents containing information of which the plaintiff has had actual notice" overlooks the clarification by the Second Circuit that "mere notice or possession" of a document is insufficient to bring it into consideration on a motion to dismiss:

> In <u>Cortec</u>, we explored the question of what documents a district court may consider when disposing of a Rule 12(b)(6) motion. We stated that, generally, the harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered. . . . We considered this standard again in <u>Brass v. American Film Technologies, Inc.</u>, 987 F.2d 142, 150 (2d Cir. 1993), where we stated in dicta that, on a motion to dismiss, a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.

<u>Chambers</u>, 282 F.3d at 153. Defendant's contention that the Court may consider "relevant documents 'required by law to be filed, and actually filed' with a government regulatory agency" (<u>see</u> Def. Mem. [Doc. # 19] at 8) also exceeds the scope outlined above and represents an overbroad interpretation of <u>Kramer v. Time Warner, Inc.</u>, 937 F.2d 767, 774 (2d Cir. 1991), which narrowly held that "when a district court decides a motion to dismiss a complaint alleging securities fraud, it may review and consider public disclosure documents required by law to be and which actually have been filed with the SEC."

4

Manual of Examination Procedures from the USPTO website (Def. Mot. Ex. I). The remaining exhibits submitted by the parties (Def. Mem. Exs. A to H; Pl. Opp. Mem. Ex. C) will not be considered at this stage.

**B.   Counts 1 and 2 (Lanham Act)**

Plaintiff alleges trademark infringement (Count 1) and unfair competition and false designation of origin (Count 2) under 15 U.S.C. §§ 1141(1)(a) and 1125(a), respectively. Section 1114(1)(a) prohibits using "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive," while section 1125(a) forbids "[a]ny person . . . on or in connection with any goods or services . . . [from] us[ing] in commerce any word, term, name, symbol, or device, or any combination thereof, . . . which[] is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person." Defendant argues that plaintiff has failed to state a claim because CCB's marks combine generic ("Bank") and geographic ("Greenwich") terms that are entitled to no protection under the Lanham Act.

To prevail under either of these sections, plaintiff must

5

prove that its mark is entitled to protection and that defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods. See Virgin Enters. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003). Plaintiff pleads that GBTC is entitled to protection based on its registration on the Supplemental Register of the USPTO.[2] In addition to the registration of its name, plaintiff contends it is known as "Greenwich Bank" and has acquired substantial goodwill under this name during its "more than twenty years of banking experience in Greenwich" and by "reach[ing] out to the Greenwich community" through various programs (Compl. ¶¶ 9, 10), and that "the Greenwich Bank Marks have become distinctive of the banking services provided by Plaintiff" (id. ¶ 14). Defendant argues that "Greenwich" and "Bank" are geographic[3]/generic terms not entitled to trademark protection.[4]

---

[2] Marks "registered on the supplemental register will not, prima facie, receive protection as valid trademarks, . . . [but] a mark registered on the supplemental register is not necessarily different in this respect from one registered on the principal register, for while registration on the principal register confers certain advantages . . ., it does not, taken alone, mean that the mark will be protected." Clairol, Inc. v. Gillette Co., 389 F.2d 264, 268 (2d Cir. 1968).

[3] A geographic term is entitled to no trademark protection absent proof of secondary meaning, except when "used in an arbitrary or suggestive manner, taking into account the nature of the goods or services at issue." Forschner Group v. Arrow Trading Co., 30 F.3d 348, 353-354 (2d Cir. 1994).

[4] Defendant relies on Bank of Tex. v. Commerce Sw., Inc., 741 F.2d 785 (5th Cir. 1984), Cmty. First Bank v. Cmty. Banks,

6

However, this determination requires a more cultivated factual record to ascertain plaintiff's trademark status.[5] "[T]he initial classification of a mark to determine its eligibility for protection is a question of fact," Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1039-1040 (2d Cir. 1992); Genesee Brewing Co., Inc. v. Stroh Brewing Co., 124 F.3d 137 (2d Cir. 1997), and at this preliminary stage, attempting to decide whether plaintiff's mark — while comprising the generic term "bank" and the geographic term "Greenwich" — taken as a whole is "generic" and not entitled to trademark protection, would constitute "premature-fact-finding." See Courtenay Comm'ns Corp. v. Hall, 334 F.3d 210 (2d Cir. 2003) (vacating and remanding

---

360 F. Supp. 2d 716 (D. Md. 2005), and Bay State Savings Bank v. Baystate Finan. Servs., 338 F. Supp. 2d 181 (D. Mass. 2004), which concerned whether certain "bank" names should be categorized as generic or descriptive. These cases were decided, however, at a more procedurally advanced stage, with more fully developed records.

> [5] "Arrayed in an ascending order which roughly reflects their eligibility to trademark status and the degree of protection accorded, these classes are (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." . . . Suggestive, arbitrary and fanciful marks, "because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." . . . Generic marks are never entitled to protection.

Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1039 (2d Cir. 1992) (quoting Abercrombie & Fitch Co. v. Hunting World, 537 F.2d 4, 9 (2d Cir. 1976); Two Pesos v. Taco Cabana, 505 U.S. 763 (1992)).

7

dismissal of Lanham Act claims where district court had concluded on a motion to dismiss that the mark was generic and that plaintiff had therefore failed to state a claim). Plaintiff's allegation that its reputation and services are associated with "Greenwich Bank" adequately pleads the first element for protection under the Lanham Act. See, e.g., Hearts on Fire Co., L.L.C. v. L.C. Int'l Corp., No. 04cv2536, 2004 U.S. Dist. LEXIS 14828 (S.D.N.Y. July 30, 2004) (allegation "that the marks are entitled to protection as they have become associated with [plaintiff's] diamond products" was sufficient to survive motion to dismiss Lanham Act claim).

The second element of likelihood of confusion is shown where "numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark." Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072, 1077 (2d Cir. 1993). Likelihood of confusion balances eight non-exhaustive factors: (1) the strength of plaintiff's mark; (2) the similarity of the parties' marks; (3) the proximity of the parties' products in the marketplace; (4) the likelihood that the plaintiff will "bridge the gap" between the products; (5) actual consumer confusion between the two marks; (6) the defendant's intent in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the relevant consumer group. See

8

Playtex Prods. v. Georgia-Pacific Corp., 390 F.3d 158, 161-162 (2d Cir. 2004) (citing Polaroid Corp. v. Polarad Electr. Corp., 287 F.2d 492 (2d Cir. 1961)).

Plaintiff pleads that defendant BOG's name "is confusingly similar . . ., in close geographic proximity to and in direct competition with Greenwich Bank" (Compl. ¶ 34) and "is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of Defendant's banking services" (id. ¶ 35). CCB also asserts that this "confusingly similar [name] . . . constitutes unfair competition and false designation of origin." On a motion to dismiss, the Court has no record to sift through to assess the Polaroid factors. Rather, because plaintiff has adequately pled the second element required to prove a Lanham Act violation, defendant's Motion will be denied on Counts 1 and 2.

### C. Count 3 (CUTPA)

Plaintiff's third count alleges that defendant has "engage[d] in unfair methods of competition and unfair or deceptive acts or practices in the conduct of [] trade or commerce," in violation of Conn. Gen. Stat. § 42-110b(a). The parties agree that "a Lanham Act violation is an automatic CUTPA violation." Suisman, Shapiro, Wool, Brennan, Gray, & Greenberg, P.C. v. Suisman, No. 3:04cv745 (JCH), 2006 U.S. Dist. LEXIS 8075 (D. Conn. Feb. 15, 2006) (citing Timex Corp. v. Stoller, 961 F.

9

Supp. 374, 381 (D. Conn. 1997); <u>Nabisco Brands, Inc. v. Kaye</u>, 760 F. Supp. 25, 29 (D. Conn. 1991); <u>Dial Corp. v. Manghnani Investment Corp.</u>, 659 F. Supp. 1230, 1239 (D. Conn. 1987)). Thus, as discussed above with respect to Counts 1 and 2, plaintiff has stated a claim for violation of CUTPA.

**IV. Conclusion**

Accordingly, defendant's Motion to Dismiss [Doc. # 18] is DENIED.

IT IS SO ORDERED.

_____
JANET BOND ARTERTON, U.S.D.J.

**Dated at New Haven, Connecticut, this 2 day of May, 2007.**